UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BAYRON ANIBAL VICENTE VICENTE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 2:26-cv-00437-JPH-MG |
| | ) |
| BRISON SWEARINGEN, *et al.*, | ) |
| | ) |
| Respondents. | ) |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Bayron Vicente is a noncitizen who was arrested by U.S. Immigration and Customs Enforcement ("ICE") officials on June 22, 2026, and is detained at the Clay County Jail in Brazil, Indiana. Dkt. 1 at ¶ 1. Mr. Vicente now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a bond hearing pursuant to 8 U.S.C. § 1226(a). Dkts. 1 at 31; 8 at 24-26.

For the reasons discussed, the Court grants the petition and orders Respondents to either afford Mr. Vicente a bond hearing or release him from custody.

## I.    Facts

Mr. Vicente is a citizen of Guatemala but has lived in the United States since 2019. Dkt. 1 at ¶ 53-54. He came to the United States without inspection at an unknown location. Dkt. 7-1 at 7-8. Mr. Vicente then moved to Indiana and lived with a relative. *Id.*

1

On June 21, 2026, Mr. Vicente was arrested by the Indiana State Police for operating a vehicle while intoxicated. Dkt. 7-1 at 8. He was temporarily held in the Marion County Jail but was released to ICE pursuant to a detainer lodged with the Marion County Sheriff. *Id.* Mr. Vicente was then taken to the Clay County Jail in Brazil, Indiana, pursuant to an I-200 administrative warrant, where he is being held without bond. *Id.*; dkt. 1. The immigration warrant, issued on June 22, 2026, explicitly authorized his detention under § 1226 (§ 236 of the INA). Dkt. 7-1 at 5.

ICE also issued a Notice to Appear for removal proceedings on June 22, 2026, which charges Mr. Vicente with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. 7-1 at 1, 4. The "arriving alien" checkbox is unmarked. *Id.* at 1.

Mr. Vicente's removal proceedings remain pending. Dkts. 1; 7-1.

## II.    Analysis

Mr. Vicente claims that his current detention violates the Immigration and Nationality Act ("INA") because he has unlawfully been denied a bond hearing under § 1226(a). Dkt. 1 at 22-23. He also argues that his detention violates the Due Process Clause of the Fifth Amendment. *Id.* at 23-31. Respondents argue that Mr. Vicente is lawfully detained on a mandatory basis under the INA pursuant to 8 U.S.C. § 1225(b)(2)(A) and that 8 U.S.C. § 1226(a) does not apply to him. Dkt. 7 at 3-7. They argue in the alternative that, if the Court were to find

§ 1226(a) applicable to Mr. Vicente, the appropriate remedy would be to order a bond hearing. *Id.* at 14.

The Court finds that Mr. Vicente's detention is governed by § 1226(a) and that it is unlawful because he has not been afforded a bond hearing. Because Mr. Vicente is entitled to habeas corpus relief on this ground, the Court does not address his due process challenge. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").

### A. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . . [T]he Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

> (A) bond . . . ; or

> (B) conditional parole[.]

8 U.S.C. § 1226(a).

An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged

in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### 1. Mr. Vicente Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)

The Court has previously determined that considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Mr. Vicente who lived in the interior of the United States for years and were arrested pursuant to an administrative warrant. *See Alejandro v. Olson,* 817 F. Supp. 3d 672, 677 (S.D. Ind. 2025); *Mendoza-Loera v. Warden, Clay Co. Jail,* 2:25-cv-00554-JPH-MJD, dkt. 16 at 8–11 (S.D. Ind. Nov. 21, 2025). As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and

5

1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *See Alejandro*, 817 F. Supp. 3d at 677.[1]

In December 2025, the Seventh Circuit issued an opinion in *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (*Castañon-Nava I*). There, the Seventh Circuit determined that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. The Court has relied on that opinion as persuasive authority[2] and continues to do so after the Seventh Circuit's most recent opinion in *Castanon-Nava. See* 175 F.4th 828 (7th Cir. 2026) (*Castañon-Nava II*).

Respondents cite a recent Fifth Circuit Court of Appeals decision, which upheld the government's interpretation of § 1225(b)(2)(A) in finding that "seeking admission" is a permissible redundancy for "applicant for admission." Dkt. 7 at 5-7; *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) ("The

---

[1] The Court incorporates by reference its more fulsome statutory interpretation of 8 U.S.C. §§ 1226 and 1225 and corresponding analysis of the circumstances to which those statutes apply as set forth in *Alejandro*, 817 F. Supp. 3d 672, *Jackson Rizo v. Swearingen*, Case No. 2:26-cv-00026-JPH-MKK (S.D. Ind. January 23, 2026), *Corzo Martinez v. Olson et al.*, No. 2:26-cv-00003-JPH-MKK, Dkt. 13 (S.D. Ind. January 10, 2026).

[2] *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' [161 F.4th at 1061]. But the statutory-interpretation issue that the opinion resolved was one purely of law, and any adjustment to the factual record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

Supreme Court has observed that 'redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication' . . . . That seems doubly true where the ordinary meaning of the terms involved overlap. Because being an applicant ordinarily entails seeking something, it seems natural to use the words somewhat interchangeably.") (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)).[3] Even if the terms refer to different things, the Fifth Circuit found that petitioners such as Mr. Vicente can be said to be "seeking admission" even though they have resided within the country for years and are not affirmatively seeking to enter the United States. *Id.*

Respondents also cite a recent Eighth Circuit case, *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). *See* dkt. 7 at 4-5, 7-8. The *Avila* court held that the meanings of "applicant for admission" and "seeking admission" and the grammatical structure of 8 U.S.C. § 1225(b)(2)(A) show that "in the context of the statute the two phrases are synonymous." 170 F.4th at 1135.

---

[3] *Buenrostro-Mendez* is somewhat complicated by *Rodriguez v. Ortega*, --- F.4th ---, No. 26-50183, 2026 WL 1906557 (5th Cir. July 2, 2026). In a decision issued after this matter was fully briefed, the Fifth Circuit left *Buenrostro-Mendez*'s interpretation of §§ 1225 and 1226 in place but also held that noncitizens subject to detention under § 1225(b)(2)(A) have a Fifth Amendment due process right to a bond hearing if detained for more than 90 days. *Id.* at *16 ("We conclude that the Government may detain aliens under Section 1225(b)(2)(A) for ninety days but no longer without a bond hearing. . . . We are not ordering any particular process, and it is for the defendants to determine in what manner to provide such a hearing within those 90 days. . . . Our only requirement is that a hearing must be held within 90 days of the commencement of detention and that at the hearing, the Government must articulate an individualized justification for further detention without bond."). Because this Court orders a bond hearing under § 1226(a), the Court need not consider *Rodriguez*'s application here or what relief might be available under the Fifth Amendment.

7

Countering those circuit decisions, the Second Circuit recently decided *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026). There, the Second Circuit rejected the government's argument and adopted the reasoning set forth in *Castañon-Nava I*: "Although divided panels in two other circuits have agreed with the government, . . . we respectfully find the statutory analysis in those decisions, which largely mirrors the government's flawed arguments in this case, to be unpersuasive." *Id.* at 72.  The court went on to conclude that "because Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,' it does not apply to Petitioner." *Id.* at 74. As Respondents note, the Eleventh Circuit joined the Second Circuit in rejecting the government's expansive interpretation of § 1225. *See Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1285 (11th Cir. 2026).[4] The Sixth Circuit came to a similar conclusion in *Lopez-Campos v. Raycraft*, 175 F.4th 713,

---

[4] "Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—'an alien who is an applicant for admission' and 'an alien seeking admission'—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years." *Id.* at 21.

725 (6th Cir. 2026),[5] followed by the Tenth Circuit in *Santillan Quiroz v. Mullin*, --- F.4th ----, No. 26-6019, 2026 WL 1876709, at *3 (10th Cir. June 30, 2026).[6]

This Court is not convinced that the Seventh Circuit will eventually join the *Buenrostro-Mendez* and *Avila* side of the circuit split. So, in line with *Castañon-Nava I, Cunha, Hernandez Alvarez, Lopez-Campos*, and now *Santillan Quiroz,* the Court continues to rely on its previous conclusion that § 1225(b)(2)(A) does not apply to undocumented aliens like Mr. Vicente who have lived in the interior of the United States and were arrested on an administrative warrant "command[ing]" that they be arrested pursuant to 8 U.S.C. § 1226. *See* dkt. 7-1.

Moreover, the Notice to Appear requires he appear for full removal proceedings pursuant to § 1229a, which does not state that Mr. Vicente is an "arriving alien" and instead lists him as an individual who is "present in the United States." Dkt. 9-1. Given the government's treatment of Mr. Vicente, *e.g.*, arresting him pursuant to a warrant authorized by § 1226 and ordering him to appear for full removal proceedings, the government cannot plausibly now

---

[5] "We therefore find that an 'applicant for admission' is not necessarily 'seeking admission.' Because no Petitioner is alleged to be seeking admission or lawful entry into the United States, § 1225(b)(2)(A)'s mandatory detention scheme does not apply to them. And since '§ 1226 applies to aliens already present in the United States' and 'creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings,' Petitioners could have been detained pursuant to only § 1226." *Id.* at 11.

[6] The Tenth Circuit issued its opinion in *Santillan Quiroz* in the midst of the briefing in this case. The Tenth Circuit decided: "By statutory definition, [the petitioner] is an applicant for admission because he is present in the United States without having been admitted" but that "he is not seeking admission since he has no present request for lawful entry pending." 2026 WL 1876709 at *6-7. The court continued: "Noncitizens in [the petitioner's] position – that is, those who entered the United States without admission and who have lived here since – are categorically unable to seek admission while they remain in the country." *Id.* at *7.

maintain that he is subject to § 1225(b)(2)(A) and therefore categorically ineligible for discretionary release.

In sum, the record demonstrates that Mr. Vicente's detention is authorized only by § 1226(a), entitling him to consideration of release on bond.

### B. Scope of Relief

Mr. Vicente is entitled to habeas relief because his continued detention without a bond hearing violates "the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984).

Mr. Vicente requests immediate release from custody or, alternatively, an individualized bond hearing. Dkts. 1; 8. Immediate release is the customary remedy in habeas proceedings. *See Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Mr. Vicente's immediate release and instead orders Respondents to provide him with an individualized bond hearing as required by § 1226(a).

Mr. Vicente also asks the Court to impose on the government the burden of proof at the bond hearing. Dkt. 8 at 24. The Court declines to do so. The Seventh Circuit has not answered the question of who bears the burden of proof in an administrative bond hearing, and the circuits that have answered the question have not answered in unison. Section 1226 is silent as to the burden

of proof, so Mr. Vicente's argument must be purely constitutional. A bond hearing without Court-imposed instructions regarding the burden of proof may yet result in his release on bond, or it may result in the denial of bond for reasons unrelated to the burden of proof. Mr. Vicente's detention is currently unlawful because he has been deprived of a bond hearing—not because the government conducted a bond hearing that failed to conform to specific standards. At this point, it is prudent for the Court to avoid an unnecessary constitutional decision. *Thomas*, 697 F.3d at 613.

### III.    Conclusion

The Court **grants** the petition to the extent that **no later than 5:00 p.m. on July 31, 2026**, **Respondents must either**: (1) provide Mr. Vicente with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Mr. Vicente from custody, under reasonable conditions of supervision. Respondents must file documentation certifying that they have either provided Mr. Vicente with a bond hearing or released him from detention **within two days** after the hearing or his release, whichever is applicable. If Federal Respondents hold a bond hearing, the Attorney General is **ordered** to provide notice of the bond hearing to Mr. Vicente's counsel upon the scheduling of the hearing.

The petition is **denied** to the extent it seeks immediate release. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 7/23/2026

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

11

Distribution:

Nora Unverzagt Galindo
Law Office of Nora Galindo
nora@noragalindolaw.com

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov